Robert L. Herbst (RLH-8851)
Rachel M. Kleinman(RK-2141)
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue
New York, New York 10016
(212) 490-0400
Attorneys for Plaintiff



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
KRYSTAL BENNETT and PATRICIA HOWARD,

                Plaintiffs,

-against-

THE CITY OF NEW YORK, a Municipal Corporation;
NYPD Officer DAVID PABON, NYPD LIEUTENANT
JEFFREY GANTT, NYPD Officer OSCAR HERTIER; and
NYPD Officer JANE DOE, individually and in their
official capacities,
                Defendants.
------------------------------------------------------------------x

ECF CASE
08cv0914 (GEL)

**FIRST AMENDED**
**COMPLAINT**

JURY TRIAL
DEMANDED

      Plaintiffs Krystal Bennett and Patricia Howard, by their attorneys Beldock Levine & Hoffman LLP, allege for their Complaint against the Defendants, upon information and belief as follows:

### JURISDICTION

    1.    This action is brought pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and the aforementioned statutory and constitutional provisions. Plaintiffs further invoke the supplemental jurisdiction of this Court under 28 U.S.C. §

1367 to hear and decide claims arising under state law.

## VENUE

2.      Venue is properly laid in this District under 28 U.S.C. § 1391(b), this being the District in which a substantial part of the events and omissions giving rise to the claims occurred and in which one or more defendants reside.

## PARTIES

3.      Plaintiff KRYSTAL BENNETT is and was at all times material herein a citizen and resident of the United States and the State of New York.

4.      Plaintiff PATRICIA HOWARD is and was at all times material herein a citizen and resident of the United States and the State of New York

5.      At all times material herein, defendant NEW YORK CITY was a Municipal Corporation, duly organized and existing under and by virtue of the laws of the State of New York.

6.      Defendant Officer DAVID PABON, Housing Bureau, Police Service Area 5 ("PSA 5"), was at all times material herein a New York City Police Department ("NYPD") officer employed by defendant New York and acting under color of law and under color of his authority as an officer, agent, servant and employee of defendant.

7.      Defendant LIEUTENANT JEFFREY GANTT, 32nd Police Precinct, was at all times material herein a New York City Police Department ("NYPD") lieutenant employed by defendant New York and acting under color of law and under color of his authority as an officer, agent, servant and employee of defendant.

8.      Defendant Officer OSCAR HERITIER, PSA 5, was at all times material herein a

New York City Police Department ("NYPD") officer employed by defendant New York and acting under color of law and under color of his authority as an officer, agent, servant and employee of defendant.

9. Defendant Officer JANE DOE, Housing Bureau, Police Service Area 5 (Shield Nos. unknown), was at all times material herein New York City Police Department ("NYPD") an officer employed by defendant New York and acting under color of law and under color of his authority as an officer, agent, servant and employee of defendant.

## FACTUAL ALLEGATIONS AND FEDERAL CLAIMS FOR RELIEF

10. At all times material herein, plaintiff BENNETT, and her aunt, plaintiff HOWARD, African-American females, lived at 263 West 114th Street, in Harlem, in the City, County and State of New York.

11. On September 27, 2006, at approximately 2:00 a.m., plaintiff BENNETT was standing with two female friends on the steps in front of their residence. Plaintiff BENNETT was taking out one of her friend's braids, when a New York Police Department ("NYPD") squad car, followed by a police van, parked in front of an adjacent building. Defendant GANTT exited the squad car and walked over to plaintiff BENNETT and her friends.

12. Although all three women lived in the building in front of which they were standing, the officer ordered them to come down off the steps.

13. Plaintiff BENNETT recognized defendant GANTT as an NYPD Lieutenant who routinely harassed and/or arrested young women in the neighborhood without cause.

14. Plaintiff BENNETT and her friends complied with defendant GANTT's order, and left the steps of their building.

3

15. After the three women came down off the steps, defendant GANTT told plaintiff BENNETT that he was going to bring a female officer to search her. When plaintiff asked him why she was going to be searched, defendant GANTT responded that he did not need a reason to have her searched.

16. When Plaintiff BENNETT responded that she understood that he did need some reason to search her, defendant GANTT stated, "Well, since you need a reason, someone told me that you sold them crack."

17. During this exchange, two additional male NYPD officers, defendants HERITIER and PABON, exited the police van and approached Plaintiff BENNETT.

18. Plaintiff BENNETT then used her cell phone to call her grandmother, with whom she lived, who had been asleep in her apartment. BENNETT informed her grandmother that she was being harassed downstairs by an officer falsely claiming that she had sold drugs.

19. While plaintiff BENNETT was on the phone, defendant GANTT, verbally reacted to plaintiff's call and grabbed Ms. Bennett's right arm, twisting it behind her back.

20. Defendant HERITIER, took hold of plaintiff BENNETT's left arm and pulled it towards him. He then grabbed plaintiff's left hand and twisted it, causing her to drop the phone. She was yanked from side to side as one of the defendants handcuffed her.

21. Defendant GANTT then began to put Ms. Bennett in a choke hold, while defendant HERITIER pulled her hair (a significant chunk of which later fell out) and stepped on her left ankle to make her lose her balance. One or both of these defendants then jointly slammed BENNETT onto the hood of a car.

22. Plaintiff HOWARD, Ms. Bennett's aunt, who works as a New York City

corrections officer, was called downstairs during the altercation. When plaintiff HOWARD came outside, she saw the officers cuffing and grabbing BENNETT. HOWARD asked defendant HERITIER why they were arresting her niece.

23.  Defendant GANTT responded to HOWARD by telling her to "get out of here." When HOWARD responded that she was just asking a question, defendant GANTT grabbed her by the neck with one hand and threw her face-first onto the hood of a civilian car. He then handcuffed plaintiff HOWARD.

24.  Plaintiffs HOWARD and BENNETT were then both placed, handcuffed, into a police van.

25.  As they were being placed in the vehicle, plaintiffs overheard defendant GANTT say to defendant PABON, "Make sure you search the van good and whatever you find put it on her," pointing to BENNETT.

26.  Plaintiffs were taken by van to the NYPD's Police Service Area # 5 precinct, which is located at 221 East 123rd Street, between 2nd Avenue and 3rd Avenues in Manhattan.

27.  Plaintiffs were made to stand in handcuffs for over an hour. They were then searched by defendant JANE DOE and placed in a cell.

28.  Plaintiffs were given summonses for disorderly conduct. Plaintiffs' summonses were completed by defendant Officer PABON.

29.  After receiving the summonses, plaintiffs were released from police custody.

30.  Plaintiffs appeared in court to answer their summonses on December 4, 2006.

31.  At plaintiffs' court appearance the charges against them were immediately dismissed.

32. The arresting officers did not appear in court on December 4, 2006..

33. Plaintiff BENNETT sought and received medical attention on several occasions for injuries to and pain in her back and wrists sustained during and as a result of her arrest.

34. The defendants' arrest and prosecution of plaintiffs and defendants' use of physical force upon plaintiffs was without just cause, malicious and abusive, and was calculated to inflict severe emotional distress.

35. Since the filing of a CCRB complaint and this lawsuit, plaintiff BENNETT has experienced continuing harassment from defendant GANTT.

36. The acts and conduct described above were performed under color of law and violated KRYSTAL BENNETT's and PATRICIA HOWARD's rights:

    (a) not to be deprived of liberty without due process of law;

    (b) to be free from unreasonable seizure of their persons;

    (c) not to have excessive force used against them;

    (d) to be free of malicious prosecution;

    (e) to be free of abuse of process;

    (f) to the equal protection of the laws;

    (g) to equal privileges and immunities of the laws; and

    (h) to free speech and to petition for redress of grievance

all in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983, 1985 and 1986.

37. Upon information and belief, defendant City of New York by its policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual defendants'

wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue; and/or engendered and fostered a climate to allow or encourage those acts to continue.

38. Moreover, upon information and belief, the actions of the individual defendants resulted from and were taken pursuant to a de facto policy and/or well-settled and widespread custom and practice of The City of New York, which is implemented by police officers of said City: to summarily, and without justification, arrest and threaten to arrest young women in this area without cause, to physically and verbally engage persons in the absence of any need to resort to physical force or oral abuse when such persons question police conduct; to use physical intimidation to prevent members of the public from questioning such conduct; and to circumvent potential discipline for such conduct and undermine established disciplinary channels through, among other methods, sanctioning and/or encouraging and/or allowing and/or not stopping "a conspiracy of silence" among other members of the Police Department to prevent any report of the misconduct of peer and superior officers.

39. Upon information and belief, the existence of such de facto policies and/or well-settled and widespread customs and practices has been known to supervisory and policy-making officers and officials of the Police Department and the City of New York for a substantial period of time.

40. Upon information and belief, despite knowledge of such illegal de facto policies and practices, the supervisory and policy-making officers and officials of the Police Department and The City of New York have not taken adequate steps to terminate those policies and practices, have not disciplined individuals who engage in such practices, or otherwise properly

trained police officers with regard to the constitutional and statutory limits on the exercise of their authority, and have instead sanctioned and ratified and allowed those policies, customs and practices through their deliberate indifference to or negligent disregard of the effect of those policies, customs and practices upon the constitutional rights of persons in the City of New York.

41. Upon information and belief, and without limiting the foregoing, the City of New York has specifically failed to terminate said practices in the following manner:

    a. Has failed to institute police officer selection and training programs capable of detecting, reducing or eliminating racial and class-based prejudice;

    b. Has failed to properly train, instruct, and discipline police officers with regard to the use of force;

    c. Has failed to properly train, instruct, and discipline police officers with regard to reasonable searches and seizures;

    d. Has failed to properly train, instruct, and discipline police officers with regard to their duty to protect citizens from other officers' excessive use of force or other misconduct;

    e. Has failed to properly train, instruct or discipline police officers with respect to use of their authority;

    f. Has permitted police officers, particularly by a failure to discipline, to maintain the "wall of silence" and to conceal and fail to report the misconduct of other police officers;

42. Defendant City of New York is directly liable and responsible for the acts of the individual defendants because it has repeatedly and knowingly failed to properly supervise, train

and discipline said officers and/or agents and because it repeatedly and knowingly failed to enforce the rules and regulations of the NYPD and the laws of the State of New York and the United States.

43. The knowing and repeated failure of the defendant City of New York to properly supervise, train and discipline said officers and/or agents actually caused the injuries to plaintiffs alleged herein.

44. Upon information and belief, defendant City of New York knew or should have known that the acts alleged herein would deprive plaintiffs of their rights without due process of law, in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Article 1, §§ 1, 6, 8, 11 and 12 of the Constitution of the State of New York, including, without limitation, such rights as plaintiffs' rights to freedom from illegal seizure of his person, freedom from loss of liberty, freedom of speech, equal protection of the laws, equal privileges and immunities under the laws, and to due process of law.

## STATE LAW CLAIMS FOR RELIEF

45. The allegations of the preceding paragraphs are incorporated by reference herein.

46. The acts and conduct of the defendants complained of herein constitute assault, battery, false arrest and imprisonment, malicious prosecution, abuse of process, negligence and gross negligence, and negligence and gross negligence in training, hiring and supervision under the laws of the State of New York.

47. The acts and conduct of defendants violated plaintiffs' rights under Article 1, §§ 1, 6, 8, 11 and 12 of the New York State Constitution.

48. Plaintiffs BENNETT and HOWARD filed a Notice of Claim for their claims arising from incidents on September 27, 2006 with the Comptroller of the City of New York on November 21, 2007.

49. Plaintiffs BENNETT and HOWARD filed a Supplemental Notice of Claim with the Comptroller of the City of New York on January 11, 2008.

50. More than thirty (30) days have elapsed since service of the Notice of Claim, and the Comptroller of the City of New York and defendant City of New York have neglected and/or refused to adjust or pay said claims.

51. Defendant New York City is liable for the actions of the individual defendants under the doctrine of respondeat superior.

WHEREFORE, plaintiffs KRYSTAL BENNETT and PATRICIA HOWARD demand judgment and pray for the following relief, jointly and severally, against the defendants:

a. full and fair compensatory damages in an amount to be determined by a jury;

b. punitive damages in an amount to be determined by a jury;

c. interest, costs and the reasonable attorneys' fees and disbursements of this action;

d. and such other and further relief as appears just and proper.

Dated:   New York, New York
         May 23, 2008

_____
ROBERT L. HERBST (RLH 8851)
RACHEL M. KLEINMAN (RK 2141)
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 353-9587

*Attorneys for the Plaintiffs*